OPINION OF THE COURT
Michael D. Stallman, J.
This CPLR article 78 proceeding challenges the constitutionality of the City’s new driving while intoxicated (DWI) vehicle forfeiture policy.
FACTS
On February 20, 1999, Police Commissioner Safir announced that the City would apply the Property Clerk Forfeiture Law (Administrative Code of City of NY § 14-140) to vehicles operated by individuals arrested for driving while intoxicated (Vehicle and Traffic Law § 1192 [2] et seq.). At 10:30 p.m. on February 21, 1999, police stopped and arrested petitioner for DWI. (Vehicle and Traffic Law § 1192 [2], [3].) The arresting officer concluded that petitioner was intoxicated based on the strong smell of alcohol, watery and bloodshot eyes, and coordination tests. A breathalyzer indicated .11% blood alcohol content, over the .10% intoxication threshold. Officers took petitioner’s 1988 Acura for forfeiture. By letter of February 26, 1999, petitioner’s attorneys demanded its return.
By order to show cause[1] and petition dated March 9, 1999, petitioner commenced this proceeding. Petitioner seeks a final *448 judgment invalidating the City’s policy and the taking and retention of his car. On March 19, 1999, Property Clerk Ryan commenced a separate action against petitioner for a judgment declaring the vehicle forfeited as the instrumentality of the crime of driving while intoxicated. The criminal action is pending.
I
Petitioner challenges the City policy as statutorily unauthorized and preempted by State law.
Administrative Code of the City of New York § 14-140, adopted under the police powers provision of the Municipal Home Rule Law, defines the status of property by its nexus to crime and declares the City’s consequent right to hold it. (Municipal Home Rule Law § 10 [1] [ii] [a] [12].) Administrative Code § 14-140 (b) directs that certain property, including that “suspected of having been used as a means of committing crime or employed in aid or furtherance of crime * * * shall be given * * * into the custody” of the Police Department Property Clerk. The law provides that anyone who used such property shall not be deemed the lawful claimant. (Administrative Code § 14-140 [e] [1].) The City’s forfeiture procedures (38 RCNY ch 12, subch B), codified pursuant to Federal consent decrees (see, McClendon v Rosetti, 369 F Supp 1391 [SD NY]) permit the Property Clerk to decline to return property if there is “reasonable cause to believe that [it] * * * was the proceeds or instrumentality of a crime” (38 RCNY 12-36, now 38-A RCNY 12-36). The Property Clerk then must “cause a civil forfeiture proceeding or other similar civil proceeding to be initiated” (38 RCNY 12-36) either before or within 25 days of a claimant’s demand.
Federal and State courts have assumed that the Administrative Code and codified rules form a proper statutory basis for a forfeiture action or proceeding. (See, Butler v Castro, 896 F2d 698 [2d Cir]; Williams v New York City Police Dept., 930 F Supp 49 [SD NY]; Matter of DeBellis v Property Clerk of City of N. Y., 79 NY2d 49, 58; Matter of Property Clerk of N. Y. City Police Dept. v Ferris, 77 NY2d 428, 430.) Thus, a car used to transport a buyer to and from a drug purchase was forfeited (Matter of Property Clerk of N. Y. City Police Dept. v Ferris, supra), like one used to solicit for prostitution (Property Clerk, N. Y. City Police Dept. v Small, 153 Misc 2d 673). Just because one can buy contraband or patronize a prostitute without a car does not alter the vehicle’s nature as an instrumentality subject to forfeiture. Operation of a motor vehicle is a necessary ele *449 ment of DWI. (Vehicle and Traffic Law § 1192 [2], [3].) A drunk driver’s automobile is the quintessential instrumentality of a crime — the sine qua non without which the crime could not have been committed. It is irrelevant that the vehicle is not needed as evidence or that the District Attorney might not object to petitioner’s request for its return. An independently elected prosecutor cannot bind the Property Clerk, a nonparty to the criminal action. (See, Property Clerk of N. Y. City Police Dept. v Lanzetta, 157 AD2d 600 [1st Dept].)
State law does not preempt either the new City policy or the local law which it implements. The State asset forfeiture law (CPLR art 13-A) does not apply to petitioner, who is not charged with a felony. CPLR 1352 explicitly preserves the availability of other rights and remedies provided by law. Article 13-A “do[es] not limit or supersede” Administrative Code § 14-140. (Matter of Property Clerk of N. V. City Police Dept. v Ferris, supra, at 431.) Nothing in article 13-A’s legislative history indicates that the State intended to occupy the field. New York has a plethora of disparate forfeiture statutes;[2] the Legislature has made no attempt at over-all recodification or coordination. There is no evidence elsewhere in State law that the local forfeiture law or the new DWI policy violates overriding State policy. The new City policy implements current law; it needs no additional legislative authorization.
II
Petitioner asserts that the City unconstitutionally violated the separation of powers by imposing an additional DWI sentence, beyond that authorized by State law. (See, People v Letterlough, 86 NY2d 259 [sentencing Judge required “CONVICTED DWI” sign on car].) No case has deemed forfeiture a criminal sentence if sought in a separate civil action. Cases under the City forfeiture law have been sustained irrespective of the status of the related criminal cases. (Matter of Property Clerk of N. Y. City Police Dept. v Ferris, supra [postsentence]; see, Matter of DeBellis v Property Clerk of City of N. Y., 79 NY2d 49, supra [postguilty plea, presentence]; Moreno v City of New York, 69 NY2d 432 [criminal charges dismissed].)
Petitioner argues that forfeiture constitutes punishment under Federal constitutional law, violating Letterlough (supra). *450 Austin v United States (509 US 602)[3] held that forfeitures effected monetary deprivations, triggering the Eighth Amendment Excessive Fines Clause. It did not hold that forfeiture constitutes a sentence or punishment for double jeopardy or separation of powers analysis.[4]
Petitioner asserts that the forfeiture sought here should be deemed criminal, not civil, because the City brought the forfeiture action against the petitioner instead of his car. Civil forfeiture actions for instrumentalities were traditionally brought in rem against the “guilty” property. (E.g., The Palmyra, 12 Wheat [25 US] 1, 14; see, United States v James Daniel Good Real Prop., 510 US 43, 57-58.) Jurisdiction was obtained by seizure, attachment or lien because absent or unknown owners could not be personally served. The litigation sought only the property and not a money judgment; in personam jurisdiction was unnecessary. In contrast, collection of fines, assessments and penalties need fully exportable money judgments entitled to full faith and credit, requiring in personam jurisdiction. In personam civil proceedings to collect fines, assessments and penalties from criminal defendants have been held punitive for double jeopardy analysis.[5] (United States v Halper, 490 US 435, supra; Department of Revenue v Kurth Ranch, 511 US 767.) However, suits to forfeit contraband or instrumentalities are considered civil, remedial and nonpunitive. The nature and purpose of the remedy sought is significant, not the form of the action or the method of obtaining jurisdiction. (United States v Ursery, 518 US 267 [house used as instrumentality of crime].)
The City’s forfeiture action appropriately seeks a declaratory judgment (see, Property Clerk of N. Y. City Police Dept. v Jacobs, 234 AD2d 96 [1st Dept]), requiring a plenary action against an individual and personal service. (CPLR 3001.) The City seeks no relief other than a declaration of rights in the ve *451 hiele. Just as in rem jurisdiction requires seizure or attachment, the City law applies only to what is in the Property Clerk’s possession. Irrespective of form, the action seeks what is familiarly called “in rem forfeiture.” Civil in form and substance, it is not punishment under separation of powers analysis.
Ill
Petitioner challenges the taking and retention of his car as an unreasonable seizure. (US Const 4th Amend; NY Const, art I, § 12.)[6] Petitioner argues that the police took and kept the car without cause or necessity and without obtaining a warrant before or after the seizure. The seizure was reasonable under three theories: plain view, incident to arrest, and the automobile exception.
The plain view exception permits warrantless seizure of contraband, instrumentalities or evidence found where it is immediately apparent to permissible police observation. (Horton v California, 496 US 128; People v Diaz, 81 NY2d 106, 110.) If an object is in open view, its observation neither impinges on its owner’s privacy nor constitutes a search. (See, Arizona v Hicks, 480 US 321.) “Immediately apparent” does not mean at first glance, but before conclusion of the officer’s on-scene inquiry. (See, People v Martinelli, 117 Misc 2d 310 [Sup Ct, Kings County].)
Petitioner here has not challenged the legality of the stop; he may do so in the pending prosecution.[7] The record shows no reason for presuming the stop to have been improper. Like other pedestrians or motorists, police were able and permitted to observe petitioner driving on a public street. Concluding that he was intoxicated, the police had probable cause to believe that petitioner committed the qualitative, “common-law” count (Vehicle and Traffic Law § 1192 [3]) before the *452 breathalyzer test, which confirmed the observations and supported the quantitative count (Vehicle and Traffic Law § 1192 [2]). It was immediately apparent during the stop that the car was the crime’s instrumentality subjecting it to seizure.
Incident to lawful arrest, police may search the area within the arrestee’s control for contraband, instrumentalities or evidence, without a warrant, because a minimally intrusive, spatially limited, contemporaneous search does not encroach appreciably more on an arrestee’s privacy than the arrest. (Chimel v California, 395 US 752; People v De Santis, 46 NY2d 82; see, Kamins, New York Search and Seizure, at 283.) Petitioner has not here disputed the basis of his arrest; he may do so in Criminal Court. Arrested for DWI, petitioner was not legally able to reassume control of the vehicle. Given the car’s obvious instrumentality status, only the police had the right of possession. Because an automobile is highly mobile, secretable and transferable, retention was necessary. Given the intention to seek forfeiture, the driver’s spouse might be expected to conceal or transfer it.
The automobile exception permits police to stop and search a vehicle if they have probable cause that it contains contraband, instrumentalities or evidence of crime. (Pennsylvania v Labron, 518 US 938; People v Blasich, 73 NY2d 673.) There is less expectation of privacy in a car than in a home or office; its inherent mobility is an exigent circumstance. (See, California v Carney, 471 US 386.) If there is probable cause, no warrant is required to search a car for an instrumentality of a crime; logically, no warrant is required to seize a car that is itself an instrumentality. (See, Capraro v Bunt, 44 F3d 690 [8th Cir]; United States v Cooper, 949 F2d 737 [5th Cir]; see also, People v Quackenbush, 166 Misc 2d 364 [App Term, 2d Dept] [vehicle impounded to test for faulty brakes after fatal accident].)
Petitioner’s arrest and car seizure were virtually simultaneous, inexorable consequences of the stop. No warrant was required to arrest petitioner or to seize his car; no warrant was needed to validate his arrest and the car’s retention. (See, Florida v White, 526 US 559 [1999]; United States v Valdes, 876 F2d 1554 [11th Cir]; cf, United States v Lasanta, 978 F2d 1300 [2d Cir] [defendant arrested on unrelated warrant, separated by considerable distance from vehicle parked on private property].) Once an object is permissibly seized as an instrumentality during an arrest, no warrant, pretrial hearing or judicial approval is needed for retention during the criminal action. (See, People v Niang, 160 Misc 2d 500 [Crim Ct, *453 NY County].) It cannot be said here, as a matter of law, that the warrantless arrest, seizure or retention is unconstitutional.
IV
Petitioner alleges that the new City policy violates the Due Process Clauses of the Federal and State Constitutions because it authorizes the police to take and retain a vehicle without either a preseizure or postseizure hearing.[8] (US Const 14th Amend; NY Const, art I, § 6.)
A
The City contends that petitioner is barred from asserting a due process claim. Respondents assert that petitioner should be deemed a member of the McClendon class (McClendon v Rosetti, 369 F Supp 1391 [SD NY], supra) estopped from attacking the constitutionality of the procedures validated by the consent decrees. The United States Supreme Court has narrowly defined when a prior class action has preclusive effect on class members. “Basic principles of res judicata (merger and bar or claim preclusion) and collateral estoppel (issue preclusion) apply * * * A judgment in favor of either [the class or the defendant] is conclusive in a subsequent action between them on any issue actually litigated and determined, if its determination was essential to that judgment.” (Cooper v Federal Reserve Bank, 467 US 867, 874 [citations omitted].)
Assuming arguendo that the McClendon class was not limited to persons whose property was held by the Property Clerk prior to the end of that litigation in 1993, the 1974 and 1993 decrees cannot be given preclusive effect here. The issues actually litigated and determined in McClendon (supra) differ from those now raised. (See also, O’Brien v City of Syracuse, 54 NY2d 353, 358.) McClendon found the prior procedure inadequate, inter alia, because it placed the burden of proof on the property owner instead of the City. McClendon did not afford petitioner, or anyone who can be considered in privity with him, a full and fair opportunity to litigate the issues raised here. (See, Schwartz v Public Adm’r of County of Bronx, 24 NY2d 65; Restatement [Second] of Judgment § 27; 2 Chase, Weinstein-Korn-Miller, CPLR Manual § 25.03 [d] [rev 2d ed].) *454 Fundamental fairness requires that the court consider these issues on the merits.
B
The Due Process Clause of the Fourteenth Amendment guarantees that, absent extraordinary circumstances, “individuals must receive notice and an opportunity to be heard before the Government deprives them of property.” (United States v James Daniel Good Real Prop., 510 US 43, 48, supra; see, Fuentes v Shevin, 407 US 67, 80-82.) Civil forfeiture actions inherently may present such extraordinary circumstances. (Calero-Toledo v Pearson Yacht Leasing Co., 416 US 663, 676-680 [sustaining seizure without hearing of yacht as instrumentality of crime]; see also, United States v Eight Thousand Eight Hundred and Fifty Dollars in US Currency, 461 US 555, 562, n 12 [hereinafter 8,850 Dollars]; Matter of DeBellis v Property Clerk of City of N. Y., 79 NY2d 49, 57, supra.) A prehearing seizure of an instrumentality for forfeiture comports with due process when “ The seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.’ ” (Calero-Toledo v Pearson Yacht Leasing Co., 416 US, at 678, quoting Fuentes v Shevin, 407 US, at 91.)
Petitioner urges this court to substitute the Supreme Court’s analysis in James Daniel Good (supra).[9] Because the vehicle is a mobile instrumentality, and because its seizure was a necessary consequence of the contemporaneous arrest, Calero-Toledo {supra) provides the apposite analysis. The seizure satisfies due process under either test.
The seizure serves a significant governmental interest: it permits the Property Clerk to assert jurisdiction in order to conduct a forfeiture proceeding. (Calero-Toledo v Pearson Yacht *455 Leasing Co., supra, at 679; see, part I.) Moreover, immediate seizure of a drunk driver’s automobile upon arrest is necessary because the arrestee is legally and physically incapable of driving.[10] Preseizure notice and hearing might prevent police from effecting a forfeiture. A car, like the yacht in Calero-Toledo, is property “that could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given.” (Calero-Toledo v Pearson Yacht Leasing Co., 416 US, at 679; see, State v Konrath, 218 Wis 2d 290, 577 NW2d 601 [police unable to execute seizure order for convicted drunk driver’s vehicle because vehicle had disappeared].) In contrast, the belated land seizure held unconstitutional in James Daniel Good (supra) demanded no immediate action.
Unlike the creditors in Fuentes (supra), who effected the seizure to collect on a debt, the arresting officers are government employees who derive no economic benefit. The seizure is simultaneous with a DWI arrest for which the police must have probable cause. The arresting officer evaluates an offense committed in his or her presence. Indicia of alcohol consumption and objective tests confirming the presence of alcohol minimize the risk of erroneous deprivation.
While the City’s DWI policy prevents accused drunk drivers from using property before a determination in the criminal action, the City’s interest in deterring drunk driving and ensuring enforceability of a subsequent forfeiture order clearly outweighs the private interest affected.[11] (See, Morgenthau v Citisource, Inc., 68 NY2d 211, 221.)
C
Petitioner argues that the City’s retention of his car, without a hearing, for several months prior to conclusion of the forfeiture action, violates due process.
Due process requires a meaningful adversarial proceeding at a meaningful time. (8,850 Dollars, supra, 461 US, at 562-563; Fuentes v Shevin, 407 US, supra, at 80.) Whether the delay between a seizure and the initiation of judicial proceed *456 ings violates due process is judged by the standards for determining a constitutional speedy trial violation. (8,850 Dollars, 461 US, at 564.) The factors include: “length of delay, the reason for the delay, the defendant’s assertion of his right, and prejudice to the defendant.” (Supra, at 564, citing Barker v Wingo, 407 US 514, 530.) In 8,850 Dollars, defendant unsuccessfully claimed that the 18-month postseizure delay in commencing the forfeiture proceeding violated his due process right to a hearing at a meaningful time. The Court recognized that a prior or contemporaneous civil proceeding “could substantially hamper” a pending criminal action to the detriment of both the prosecution and the criminal defendant-property claimant.[12] (8,850 Dollars, supra, 461 US, at 567.) If pendency of a criminal action is a legitimate reason for the delayed filing of a forfeiture proceeding, then retention of the subject vehicle without a hearing, while the criminal action is pending, is also permissible.[13]
Retention prevents the vehicle from being used for repeated illegal activity. An automobile is an integral part of DWI; it poses the threat of being used as an “instrumentalit [y] of death” should the crime be repeated. (Property Clerk, N. Y. City Police Dept. v Waheed, 165 Misc 2d 382, 386 [Sup Ct, NY City].) Just as there is a strong public interest in withholding a noncontraband murder weapon from a homicide defendant, there is a strong public interest in withholding a car from a DWI defendant.
Petitioner argues that the City’s forfeiture law does not provide owners with the procedural protection critical in Citisource (supra), i.e., a hearing within five days of the ex parte attachment. However, “ ‘due process is a flexible constitutional concept calling for such procedural protections as a particular situation may demand.’ ” (Morgenthau v Citisource, Inc., at 221, citing LaRossa, Axenfeld & Mitchell v Abrams, 62 NY2d *457 583, 588.) In Citisource, after arrests for bribery and larceny, the prosecutor obtained ex parte attachment orders for $2 million of the defendants’ funds as alleged proceeds of the crimes. It is not immediately apparent that attached bank accounts are criminal proceeds. In contrast, when police have probable cause to arrest a drunk driver, the defendant’s car is undeniably the instrumentality of the charged crime. The nexus between the crime and the property, and thus the justification for forfeiture, is obvious at arrest. There has been no showing that any additional or substitute safeguard would lessen the risk of an erroneous deprivation of petitioner’s property.[14]
D
Petitioner argues that even if the City procedures do not violate Federal due process, they violate State due process. (NY Const, art I, § 6.) While the Federal and State Due Process Clauses are similar, our State clause occasionally has been accorded wider scope. (E.g., Cooper v Morin, 49 NY2d 69, 79; Sharrock v Dell Buick-Cadillac, 45 NY2d 152, 159.) Petitioner asserts that State due process is more protective, incorrectly assuming that CPLR article 13-A evinces a policy decision to reject in rem forfeitures. Rather, the breadth of article 13-A relief necessitates in personam jurisdiction. (See, parts I, II.)
Neither Federal nor State due process requires a pre- or post-seizure evidentiary hearing for seizure and retention of DWI vehicles for forfeiture during pendency of the criminal action.
V
Petitioner challenges the City forfeiture policy as an excessive fine. (US Const 8th Amend; NY Const, art I, § 5.) New York’s Excessive Fines Clause requires the same analysis as the Federal, and provides no greater protection.[15]
If a civil forfeiture contains a punitive element, it is deemed a fine under the Eighth Amendment despite its remedial *458 purpose, and must be analyzed for excessiveness. (Austin v United States, 509 US 602, 621-622, supra [courts may develop case-specific tests of excessiveness].) The City DWI forfeiture policy is punitive for Eighth Amendment purposes under Austin: it has an “escape hatch” for innocent owners; it links the forfeited property directly to the charged crime; it lacks specific correlation between the property’s value and the crime’s social cost.
While the forfeiture sought may be deemed a “fine”, it is not excessive when analyzed under any of the three tests advanced for measuring excessiveness: proportionality,[16] instrumentality[17] or a mixed instrumentality-proportionality analysis.[18]
Petitioner’s vehicle is the instrumentality of a charged crime, inseparable from it, and its prerequisite. Petitioner owns the car and drove it at the time of the alleged offense. The owner’s *459 role and his use of the property were temporally and spatially coextensive with the offense charged.
DWI is a serious crime, in both sentence and effect. As a first offense it is a misdemeanor, with a maximum sentence of one year in jail, a fine of $1,000 and three years’ probation, or a combination, plus loss of driving privileges. (Vehicle and Traffic Law § 1193 [b].) For 10 years after conviction, a subsequent offense is a felony, with up to four years possible imprisonment. (Vehicle and Traffic Law § 1193 [1] [c] [ii]; Penal Law § 70.00.) DWI is indeed “a crime which injures and tills/[19] and is an unparalleled public menace.” (Property Clerk, N. Y. City Police Dept. v Waheed, 165 Misc 2d 382, 386, supra.) The “threat posed by drunk drivers” is “empirically irrefutable.” (People v Letterlough, 86 NY2d 259, 277, supra [Bellacosa, J., dissenting].)
Petitioner estimates that the 11-year-old car is worth $2,000. While there is no evidence of his wife’s condition at the scene, as a passenger she presumably was aware of petitioner’s condition, whatever it was, and acquiesced in his driving. When the gravity of the offense and its unquestioned societal impact are compared with petitioner’s and his wife’s inconvenience, the vehicle’s retention and forfeiture is not unreasonably harsh as a matter of law. Given the severity of the available sentence, forfeiture of a used car valued at twice the maximum fine is not grossly disproportionate. Neither is this instrumentality forfeiture greater in relation to the offense than others sustained.[20]
In sum, the City’s DWI forfeiture policy does not violate the Excessive Fines Clause, as a matter of law, either facially or as applied to petitioner’s vehicle.
*460 CONCLUSION
Petitioner has not met his burden of demonstrating that the City DWI forfeiture policy is unconstitutional, contrary to law or arbitrary and capricious, either on its face or as applied to him. Accordingly it is adjudged that the petition is denied and the proceeding is dismissed.

. After argument on March 11, 1999, this court denied petitioner’s request for a temporary restraining order (1) directing return of his car pending judgment and (2) enjoining the City from commencing a forfeiture proceeding. Likely inconvenience is not proof of immediate and irreparable injury under CPLR 6313 (a).

. E.g., Public Health Law § 3388; Penal Law §§ 410.00, 415.00, 420.00, 420.05; Tax Law §§ 1846, 1847, 1848.

. Austin v United States (509 US 602, 610, supra) relied on United States v Halper (490 US 435). In 1997, the Supreme Court “disavow[ed]” Halper’s analysis. (Hudson v United States, 522 US 93, 96.) Austin’s current vitality is questionable.

. While forfeiture may have a punitive aspect, petitioner mistakenly assumes that recognizing it dictates that Letterlough (supra) was violated. Most civil litigation has a punitive or deterrent aspect. Monetary damages for negligence are compensatory, but are apportioned according to the parties’ culpability. The civil law seeks both to deter substandard conduct by the defendant, and to provide incentive to others. (See, Prosser and Keeton, Torts § 4, at 25-26 [5th ed].)

. Petitioner does not challenge the City policy on double jeopardy grounds. (US Const 5th Amend; NY Const, art I, § 6.)

. Petitioner asserts that the DWI seizure policy, even if constitutional under Federal law, is unconstitutional on independent State grounds. However, the circumstances presented here must be analyzed the same way under Federal and New York constitutional law. To the extent that People v P. J. Video (68 NY2d 296, cert denied 479 US 1091) may suggest a heightened level of scrutiny, that case involved First Amendment concerns not present here.

. See, GPL 710.20 (motions to suppress physical evidence [subdivision (1)] and chemical tests [subdivision (5)]); People v Dory, 59 NY2d 121 (arresting officer’s observations as fruit of improper stop); see, People v Evans, 152 Misc 2d 960, 968, affd 162 Misc 2d 517 (App Term, 1st Dept) (visual, olfactory and auditory observations suppressed).

. Petitioner suggests that the policy was prematurely applied when the police stopped him IV2 hours before the policy’s announced start. Petitioner cannot claim either that he lacked notice for due process purposes or that he was misled. Because the new policy implements existing law, the City could have taken the car for forfeiture without announcement.

. James Daniel Good (supra [invalidating the seizure for forfeiture of a house as the instrumentality of a drug offense for which the owner had pleaded guilty four years before]) imported the balancing test of Mathews v Eldridge (424 US 319, 335 [hearing for curtailment of Social Security benefits]). Mathews requires consideration of the private interest affected, the risk of an erroneous deprivation and probable value of additional safeguards, balanced with the Government interests and fiscal and administrative burdens.

. The law does not require police to assess the passengers and turn over the vehicle to someone who might cause an accident or fail to return it.

. If the court were to apply Mathews (supra), the balance would weigh heavily in the City’s favor. Besides the factors considered supra, a hearing would be impracticable if required as part of the arrest or arraignment. Because the City law applies only to items in the Property Clerk’s possession (see, part I), return of the vehicle would prevent the City from commencing a forfeiture action.

. In addition to the criminal civil trials, and any pretrial hearings, petitioner would require at least one more evidentiary hearing, pre- or post-seizure. Duplicative proceedings could interfere with the prosecution and prejudice petitioner, given the absence of a self-incrimination privilege in civil cases. (See, Turner Press v Gould, 76 AD2d 906 [2d Dept].) During the pendency of the criminal action, a redundant civil hearing would be of little practical benefit to accused owners, while imposing a substantial burden on the City and the courts.

. Under the City forfeiture law, precommencement deprivation is brief. The Property Clerk, upon demand, must commence a forfeiture action within 25 days. Erroneous deprivation can be shortened by an article 78 proceeding seeking immediate relief. Petitioner had an opportunity to seek immediate return of his car, and was heard by this court within 18 days of the seizure.

. One New York forfeiture statute, the “Head Shop Law” (General Business Law § 852 [2]), violated due process because it did not provide for a hearing. Unlike the City law, General Business Law § 852 (2) provided for automatic forfeiture of drug paraphernalia upon seizure, with no adversary judicial process whatsoever. (Franza v Carey, 102 AD2d 780 [1st Dept].)

. New York’s clause contains the identical text of the Federal. (See, People ex rel. Kemmler v Durston, 119 NY 569, affd sub nom. In re Kemmler, 136 US 436.) There is no evidence that incorporating the Eighth Amendment text into the State Constitution in 1846 evinced a different meaning or scope. (Supra; see People v Hale, 173 Misc 2d 140 [Sup Ct, Kings County].) The rare *458 New York cases that construed the New York Excessive Fines Clause have not concluded that it differs from the Federal provision. (See, People v Saffore, 18 NY2d 101; Matter of Seril v New York State Div. of Hous. & Community Renewal, 205 AD2d 347 [1st Dept], appeal withdrawn 84 NY2d 1008.) Neither is there any unique tradition nor attitude of what constitutes an excessive fine to define it differently under New York law. (See, People v P. J. Video, 68 NY2d 296, 302-303, supra [standards for analysis of parallel Federal and State provisions].)

. United States v Bajakajian (524 US 321) invalidated criminal forfeiture of $357,144, which defendant was convicted of exporting and failing to disclose. The criminal statute required the Judge to direct forfeiture upon sentence. The Supreme Court measured excessiveness by whether the property’s value is “grossly disproportional to the gravity of [the] offense.” (Supra, 524 US, at 323.) It held that the seized $357,144, while the subject of the crime of failure to report, was not its instrumentality. (Supra, 524 US, at 329, n 9.) It is questionable whether the Court would analyze a separate civil instrumentality forfeiture by the same proportionality analysis. (See, supra, at 328, n 8.)

. The Fourth Circuit has found proportionality analysis inapplicable to instrumentalities, as having been erroneously imported from cruel and unusual punishment analysis. (United States v Chandler, 36 F3d 358, cert denied 514 US 1082.) The Chandler test examines the nexus between the offense and the property, and the extent of the property’s role in the offense, the owner’s role in the offense, and the possibility of separating offending property from the remainder. (See, Austin v United States, supra, 509 US, at 628 [Scalia, J., concurring] [recommending a similar nexus test].)

. United States v Milbrand, 58 F3d 841 (2d Cir), cert denied 516 US 1182 (test considering [1] nature of the property and effect of its forfeiture on innocent third parties, compared with gravity of the offense and possible sentence; [2] relationship between the property and the offense; and [3] degree of owner’s culpability); Matter of Attorney Gen. of State of N. Y. v One Green 1993 Four Door Chrysler, 217 AD2d 342 (3d Dept), appeal dismissed, Iv denied 88 NY2d 841 (in accord).

. Respondents, at oral argument upon submission, indicated that annually, DWI causes over 50 deaths and over 2,000 injuries, and that first offenders cause 85% of DWI fatalities (100% this year).

. See, e.g., United States v Ursery, 518 US 267, supra (house forfeited for marihuana grown on property); United States v Milbrand, 58 F3d 841 (2d Cir), cert denied 516 US 1182, supra; United States v Chandler, 36 F3d 358 (4th Cir), cert denied 514 US 1082, supra ($569,000 property forfeited for 130 drug transactions); Matter of Property Clerk of N. Y. City Police Dept. v Ferris, 77 NY2d 428, supra (five-year-old automobile used to transport buyer to purchase of misdemeanor weight drugs); Matter of Attorney Gen. of State of N. Y. v One Green 1993 Four Door Chrysler, 217 AD2d 342, appeal dismissed, Iv denied 88 NY2d 841, supra (new automobile used to transport drugs); Property Clerk, N. Y. City Police Dept. v Small, 153 Misc 2d 673, supra (automobile valued at $550-$750 used to patronize a prostitute for $20 fee; maximum permissible fine $500).